1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9   James Ellis Bragg,                    )   No. CV 12-00813-TUC-CKJ (DTF)
                                          )
10              Plaintiff,                 )   **REPORT AND RECOMMENDATION**
                                          )
11  vs.                                   )
                                          )
12                                        )
    Carolyn W. Colvin, Acting Commissioner)
13  of Social Security,                   )
                                          )
14              Defendant.                 )
                                          )
15                                        )
                                          )
16  _____)

17          Plaintiff James Ellis Bragg brought this action pursuant to 42 U.S.C. § 405(g) seeking

18  judicial review of a final decision by the Commissioner of Social Security (Commissioner).

19   (Doc. 1, Compl.)  Before the Court are Plaintiff's Opening Brief ("Pl.'s Br."), Defendant's

20  Answer Brief ("Def.'s Br."), and Plaintiff's Reply Brief ("Pl.'s Reply").  (Doc. 21, 25 & 33.)

21  This matter has been referred to the Magistrate Judge for a Report and Recommendation.

22  (Doc. 10, 36.)  Based on the pleadings and the administrative record submitted to the Court,

23  the Magistrate Judge recommends that the District Court, after its independent review, vacate

24  the Commissioner's decision denying Plaintiff's claim for benefits and remand for further

25  proceedings.

26                          **PROCEDURAL HISTORY**

27          Plaintiff filed a protective application for disability insurance benefits (DIB) and

28  supplemental security income (SSI) pursuant to Titles II and XVI of the Social Security Act

on February 19, 2009. (Administrative Record (AR) 183-208, 210.)   Plaintiff alleged disability as of February 25, 2005 due to back and kidney problems and pain. (AR 183-95, 210, 230.) Plaintiff's application was denied initially and on reconsideration. (AR 132-51.) Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (AR 154-55.) A hearing was held on October 26, 2010 at which Plaintiff appeared with counsel and testified. (AR 109-31.) On November 5, 2010, Plaintiff requested that the ALJ amend his onset date from February 25, 2005 to March 13, 2009, thereby abandoning his claim for disability benefits. (AR 180, 286-89.)[1] On February 17, 2011, the ALJ issued an unfavorable decision. (AR 20-32.)

Plaintiff requested review by the Appeals Council. (AR 17-19.) The Appeals Council denied the request for review on September 4, 2012, making the Commissioner's decision final for purposes of judicial review. (AR 1-6.)

## FACTUAL HISTORY

Plaintiff was 47 years of age at the time of his application date. (AR 30, 210.) Plaintiff has a high school education and his past relevant work was as an auto mechanic. (AR 30, 432.) Plaintiff's medical history includes both physical and mental maladies. He has a past history of drug abuse. (AR 432.)

Plaintiff suffered a spine injury in 1986 that was stabilized with surgically-inserted rods. (AR 444.) Plaintiff suffered from kidney stones as of December 2008, but this condition appeared resolved by June 2009. (AR 315-18, 355-57, 399-412, 557-59.) However, Plaintiff had a recurrence of kidney stones in December 2009. Medical records do not show further treatment for this condition as of March 2010. (AR 590-91, 754, 726-28.) Plaintiff was diagnosed with gout in December 2008, but told his treating physician in June 2009 that his gout was stable. (AR 315-17, 559-60.)

---

[1] Plaintiff was insured for disability benefits through December 31, 2007. (AR 23.)

On June 23, 2009, and August 24, 2009, Plaintiff was treated for severe back pain. . (AR 355, 402-11, 559-63, 520-22.)   A later x-ray of Plaintiff's back on August 24, 2009, showed mild disc space narrowing and mild degenerative spurring.  (AR 561-63.) On December 7, 2009, an electromyelogram (EMG) of Plaintiff's lower extremities was normal showing no indication of nerve damage.  (AR 756.)

Plaintiff testified at the hearing that he was unable to work due to lower back pain, gout, kidney stones, and depression.  (AR 112-13, 115-16, 127-28.)  Plaintiff stated that for the past five years he has experienced gout in his left foot and knee one to three times per month.  (AR 118, 120-21.)  Plaintiff said his gout attacks last between eight hours and three days and prevent him from being on his feet.  (AR 120-21.)  Plaintiff testified that he has had back pain that lasted between seven hours and four days due to intermittent kidney stones. (AR 117, 128-29.)  He also described low back pain for eight years unrelated to gout.  (AR 121-22.)  Plaintiff said he has been using a cane for two years and that he uses it when he goes grocery shopping or walks more than a mile.  (AR 122.)  Plaintiff acknowledged that his doctors had not recommended any additional therapy or surgeries for his back.  (AR 122.) Plaintiff described his depression symptoms as a lack of desire to do anything and occasional suicidal thoughts.  (AR 123-24.)

On December 29, 2008, Plaintiff was hospitalized at the Veterans Affairs Medical Center (VAMC) due to depression, suicidal ideation, and multiple financial stressors.  (AR 319-22.)  Before this event, Plaintiff had no history of mental health issues.  Plaintiff was diagnosed with major depressive disorder, severe, without psychosis; amphetamine abuse in early remission; and adjustment disorder with depressed mood.  (AR 319-22, 362.)  On or about February 9, 2009, Plaintiff began treatment at the psychiatric unit of the hospital.  (AR 318.)  Plaintiff was discharged from the hospital on  February 20, 2009 and his health summary notes showed that he was psychiatrically stable on discharge with no suicidal ideation and that medication was prescribed.  (AR 319-22, 344.)

1    With respect to Plaintiff's outpatient treatment following his release from the hospital,
2    Plaintiff was referred to a suicide prevention team for counseling and treatment which began
3    in or about July 2009.  He also was seen by psychiatrist Sonia Godbole, M.D.  (AR 328, 332,
4    334, 532-34, 550, 648-54, 695-98, 712-15, 741-42, 829-30, 837-40.)  Plaintiff's high risk
5    treatment ceased in March 2010 and he continued to receive individual psychological
6    counseling from licensed social worker Steven Goehring.  (AR 648, 654-55, 690, 707, 711-12,
7    715, 722-23, 736-37.)  During 2009 and into 2010, Plaintiff was treated by Mehtab Siddiky,
8    M.D., for back pain and other conditions, including gout.  (AR 520-22, 547-48, 559-61, 657,
9    752, 754-55, 758-60, 921-25.)

10    Plaintiff testified at the hearing that he was taking anti-depressant medication and was
11    seeing a counselor once a month.  (AR 123.)  The ALJ submitted post-hearing interrogatories
12    to two medical consultants.  (AR 283-84, 847-54, 855-63.)

13    In his decision, the ALJ found that Plaintiff has the severe impairments of history of
14    lumbar fracture, status post surgical repair; situational affective disorder; and history of
15    substance abuse but that these impairments did not meet or medically equal the listings when
16    considered singularly or in combination.  (AR 25-26.)  The ALJ found that Plaintiff was
17    unable to perform any past relevant work as an auto mechanic which was at the heavy
18    exertional level as he had performed it and at the medium exertional level as described in the
19    Dictionary of Occupational Titles.  (AR 30.)  The ALJ determined that Plaintiff had the
20    residual functional capacity (RFC) to perform the full range of light work and that there were
21    jobs in the national economy that Plaintiff could perform considering his age, education, and
22    work experience.  (AR 27-31.)  The ALJ concluded that Plaintiff had not been under a
23    disability from February 25, 2005 through the date of decision.  (AR 31.)

## STANDARD OF REVIEW

25    The Commissioner employs a five-step sequential process to evaluate SSI and DIB
26    claims.  20 C.F.R. §§ 404.1520, 416.920; *see also Heckler v. Campbell*, 461 U.S. 458, 460-62
27    (1983).  To establish disability the claimant bears the burden of showing (1) that he is not

working; (2) that he has a severe physical or mental impairment; (3) that the impairment meets or equals the requirements of a listed impairment; and (4) that his RFC precludes him from performing his past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (citing *Richardson v. Perales,* 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1198 (9th Cir. 2004).

## DISCUSSION

This case presents two issues on appeal. Plaintiff contends that the ALJ erred in failing to assign controlling weight to the records of Plaintiff's treating physicians in assessing the severity of his symptoms and erred in evaluating the credibility of Plaintiff's symptom evidence. As part of both issues, Plaintiff notes that the ALJ did not discuss his amendment to his onset date. Defendant contends that substantial evidence supports the ALJ's decision

1   that Plaintiff is not disabled.  Defendant alternatively argues that if the Court finds error, this

2   case should be remanded for further proceedings, not for payment of benefits.

3   **Evaluation of Treating Doctors' Opinions**

4          Plaintiff contends that the ALJ failed to accord great weight to the "longitudinal

5   treatment records" of his psychiatrists and doctors in assessing the nature and severity of his

6   mental and physical impairments.  (Pl.'s Br. at 10-11.)  Defendant responds that Plaintiff has

7   not  identified any opinion reflecting his functional limitations that the ALJ failed to weigh

8   in accordance with applicable law.  (Def.'s Br. at 8.)

9          Generally, a treating physician's opinion is afforded more weight than the opinion of

10  an examining physician, and an examining physician's opinion is afforded more weight than

11  a nonexamining or reviewing physician's opinion. *Holohan v. Massanari*, 246 F.3d 1195,

12  1202 (9th Cir. 2001).  "To reject an uncontradicted opinion of a treating or examining doctor,

13  an ALJ must state clear and convincing reasons that are supported by substantial evidence."

14  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "If a treating or examining doctor's

15  opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing

16  specific and legitimate reasons that are supported by substantial evidence." *Id*.  "The opinion

17  of a nonexamining physician cannot by itself constitute substantial evidence that justifies the

18  rejection of the opinion of either an examining physician or a treating physician."  *Lester v.*

19  *Chater*, 81 F.3d 821, 831 (9th Cir. 1995).

20         Although Plaintiff did not identify the treating physicians by name, it is clear from the

21  totality of the opening brief he was referring to his treating physicians.  Plaintiff also referred

22  to certain of his medical records that showed his diagnosis of "major depressive disorder,

23  severe" and that he was treated for a back condition, gout, kidney stones and related pain.

24  (Pl.'s Br. at 10-11, referring to AR 319, 351-52, 907-09, 917, 929, 931, 940, 924-25, 920-21,

25

26

27

28

1 316-17, 723.)  Plaintiff also refers to his VAMC records that reported his GAF score of 50.

2 (Pl.'s Br. at 10.)[2]

3       With respect to Plaintiff's mental impairment, the ALJ found that Plaintiff had the

4 severe impairment of "situational affective disorder." (AR 25.)  Importantly, as  Plaintiff

5 points out, Plaintiff's hospital records showed that he was diagnosed with "major depressive

6 disorder, severe, without psychosis." (Pl.'s Br. at 10; AR 319-22.) These records were signed

7 by Plaintiff's treating physician John Costa, M.D.  (AR 322.)  Between the date of his

8 February 2009 hospital discharge and into 2010,  Plaintiff was treated by psychiatrist Dr.

9 Godbole whose records also showed Plaintiff's diagnosis of "major depressive disorder,

10 severe, without psychosis." (AR 533-34, 652-54, 695-98,   712-15, 742-45, 837-40.)

11 Moreover, after Plaintiff's February 2009 discharge from the hospital, Plaintiff received

12 outpatient counseling treatment from a high risk suicide prevention team. (AR 306, 332, 737.)

13 Plaintiff was not removed from this high risk treatment until March 2010, more than twelve

14 months after his December 2008 admission to the hospital based on his mental health

15 condition. (AR 29, 737.)

16       The ALJ in his decision discussed Plaintiff's hospitalization for suicidal ideation in

17 noting that Plaintiff had experienced one episode of decompensation. (AR 27.)  The ALJ

18 found that Plaintiff's mental condition was controlled with medication and psychotherapy, his

19 condition was described as stable, that Plaintiff denied suicidal ideation, and there was no

20 evidence of mental status deterioration or the need for additional inpatient treatment. (AR

21 29.)  In support of this finding, the ALJ referred to Plaintiff's health summaries/medical

22

23       [2] The Global Assessment of Functioning (GAF) is a scale that describes a person's

24 overall level of mental functioning. *Aguirre v. Colvin*, No. 1:12-cv-01961 SMS, 2013 WL

6512863, at *2, n. 1 (E.D. Cal. Dec. 12, 2013) (referring to *Am. Psychiatric Ass'n Diagnostic*

25 *and Statistical Manual of Mental Disorders* (4th ed. 2002) ("DSM-IV")).  The ALJ is not

26 obligated to credit or consider GAF scores in the disability determination. *Burnaroos v.*

*Colvin*, No. CV-12-03073-JTR, 2013 WL 5467154, at *5 (E.D. Wash. Sept. 30, 2013).

27

28

1  records (AR 305-418), the consultative Psychiatric Evaluation and Examination by Hunter

2  Yost, M.D., dated July 14, 2009 (AR 435-38), and the report of Plaintiff's suicide prevention

3  manager (AR 737).

4         The ALJ gave great weight to that part of the opinion of Dr. Yost that indicated that

5  Plaintiff had no mental functional limitations, finding that it was consistent with the record

6  as a whole.  (AR 30.)  Dr. Yost performed a consultative psychiatric evaluation of Plaintiff

7  in July 2009.  (AR 30, 435-39.)  Dr. Yost indicated that he was provided with Plaintiff's

8  February 2009 hospital records and a March 2009 outpatient record.  (AR. 435.)  Dr. Yost

9  noted in his report Plaintiff's diagnosis of "major depressive disorder, severe, without

10 psychosis," based on these records.  (AR. 435.)  The ALJ also afforded great weight to the

11 opinion of David G. Jarmon, Ph.D., who completed a Medical Interrogatory dated December

12 24, 2010 concerning Plaintiff's mental impairments and opined that Plaintiff's "depression

13 actually appeared to be situational rather than chronic."  (AR 30, 847-54.)  Dr. Jarmon

14 specified Plaintiff's impairment based on the evidence as "major depressive disorder, severe

15 without psychotic features" and referred to "Exhibit 15F from VA [;] GAF went from 50 to

16 65 during hospitalization."  (AR 847.)

17        In his decision, the ALJ did not explain why he rejected the treating physicians'

18 diagnosis of "major depressive disorder, severe, without psychosis" (AR 319-22) in favor of

19 "situational affective disorder."  Indeed, the ALJ did not include any explanation regarding

20 the definition of "situational affective disorder." Plaintiff's diagnosis "major depressive

21 disorder, severe" appears to be supported by Plaintiff's overall medical records.  Hence, the

22 ALJ should have explained his conclusion that Plaintiff had the severe impairment of

23 "situational affective disorder." The ALJ further erred in failing to provide clear and

24 convincing reasons for rejecting the opinions of Plaintiff's treating professionals.

25        With respect to his claim that the ALJ disregarded the treatment records relevant to his

26 physical impairments, Plaintiff refers to a December 2010 record that contains Plaintiff's

27 report that he had fallen off stairs due to a back spasm, had twisted his ankle, and was

28

assessed for axillary crutches. (Pl.'s Br. at 11; AR 931.)  This record shows that Plaintiff's chief complaint was constant right foot pain. (AR 931-34.)  Plaintiff also has referred to records as indicating that he had a gout attack while hospitalized and continued to suffer from gout pain. (Pl.'s Br. at 11; AR 924-25, 316-17, 723.)  These records show Plaintiff's gout diagnosis while he was hospitalized in February 2009 and the February 2011 lab results that indicated that Plaintiff had an elevated uric acid level and was prescribed allopurinol. (AR 316-17, 924-25.) *See Rose v. Colvin*, No. 3:12- cv-01931-HZ, 2013 WL 5536338, at *7 (D. Or. Oct. 7, 2013) (where the plaintiff merely cited to her diagnoses of gout and prescriptions of allopurinol, the evidence did not establish that she was significantly limited either physically or mentally by gout). The other record shows that Plaintiff was fitted with a knee brace. (AR 723.)

Here, the ALJ afforded great weight to the opinion of Dr. Suarez as overall consistent with Plaintiff's treatment records. (AR 29.)  Dr. Suarez examined Plaintiff on July 14, 2009 and noted that Plaintiff's upper and lower extremities showed normal ranges of motion and that he could forward flex his back to 85 degrees with some limited effort. (AR 29, 444-45.)  Plaintiff's gout did not "show" on the date of the examination. (AR 446.)  The ALJ also afforded great weight to the opinion of Charles Plotz, M.D., who completed a Medical Interrogatory dated December 18, 2010 concerning Plaintiff's physical impairments and concluded that Plaintiff's functional limitations did not preclude all work. (AR 29, 855-63.)  The ALJ did not err in his assessment of Plaintiff's medical records regarding Plaintiff's physical impairments based on the present record.

**Remand for Further Proceedings**

"The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." *Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998). "[G]enerally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly

1  developed." *Ghokassian v. Shalala*, 41 F.3d 1300, 1304 (9th Cir. 1994) (quoting *Varney v.*
2  *Sec'y of Health and Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988)).

3        The Commissioner's decision denying Plaintiff's claim for benefits should be vacated
4  and this matter should be remanded for further proceedings so that the ALJ may reconsider
5  Plaintiff's mental impairment and diagnosis in light of Plaintiff's overall medical records.
6  Remand for a payment of benefits is not warranted because there are outstanding issues that
7  must be resolved before a proper disability determination can be made. Here, the ALJ failed
8  to provide legally sufficient reasons for determining that Plaintiff had the severe mental
9  impairment of "situational affective disorder" when Plaintiff's overall medical records showed
10 his diagnosis as "major depressive disorder, severe, without psychosis" as determined by
11 Plaintiff's treating doctors and as noted by the examining and reviewing doctors.  The ALJ
12 further failed to provide sufficient reasons in evaluating the opinions of Plaintiff's treating
13 doctors regarding Plaintiff's mental impairment. These outstanding issues must be resolved
14 before the ALJ can formulate a proper RFC and determine whether Plaintiff is capable of
15 working.

16       Upon remand, the ALJ should further consider that Plaintiff amended his onset date
17 from February 25, 2005 to March 13, 2009 (AR 180, 286-89) as the ALJ failed to discuss this
18 circumstance in his decision.  While Plaintiff has not shown error in the ALJ's decision
19 regarding the limiting effect of Plaintiff's physical impairments based on the present record,
20 the ALJ should reconsider the issue in light Plaintiff's amendment to his onset date.

21       It is not necessary to consider in the instant case the ALJ's determination regarding the
22 credibility of Plaintiff's symptom testimony. The ALJ's clarification on remand of his
23 findings regarding Plaintiff's mental and physical impairments may affect the credibility
24 determination.

25

26

27

28

1

## RECOMMENDATION

2      For the foregoing reasons, the Magistrate Judge recommends that the District Court,

3  after its independent review, enter an order vacating the Commissioner's decision denying

4  Plaintiff's claim for benefits and remanding for further proceedings.

5      Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file

6  written objections within fourteen days of being served with a copy of the Report and

7  Recommendation.  A party may respond to the other party's objections within fourteen days.

8  No reply brief shall be filed on objections unless leave is granted by the district court.  If

9  objections are not timely filed, they may be deemed waived.  Any objections filed should be

10  captioned with the following case number: CV-12-0813-TUC-CKJ.

11      DATED this 7th day of February, 2014.

12

13

14

15

16                        D. Thomas Ferraro
                        United States Magistrate Judge
17

18

19

20

21

22

23

24

25

26

27

28

- 11 -